IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Paul H. TITUS & Bonnie Titus,<br>    Appellants<br>        Cross-Appellees<br><br>    v.<br><br>Robert SHEARER,<br>Trustee for the Chapter 7 Bankruptcy<br>Estate of Paul Titus,<br>    Appellees<br>        Cross-Appellants. | Civil Nos. 12-1559, 12-1560<br><br>(Bankruptcy No. 10-23668)<br>(Adversary Proceeding No. 10-2338) |

## MEMORANDUM OPINION

CONTI, Chief District Judge

Pending before the court are two appeals from the February 29, 2012, order issued by the United States Bankruptcy Court for the Western District of Pennsylvania in adversary proceeding No. 10-2338. Böhm v. Titus (In re Titus), 467 B.R. 592 (Bankr. W.D. Pa. 2012). In the memorandum opinion accompanying the order, the bankruptcy court found Paul Titus and his wife, Bonnie Titus (collectively, the "Tituses"), liable for $281,006.18 of constructively fraudulent transfers stemming from wages directly deposited into the Tituses' checking account held as tenants by the entireties. Id. at 601. The Tituses appealed from this judgment (No. 12-1559), and Trustee Robert Shearer (the "Trustee") cross appealed (No. 12-1560). For the reasons set forth below, the bankruptcy court's opinion is affirmed in part, vacated in part, and remanded for further proceedings.

## I.    Background

The parties do not contest the factual background set out in the bankruptcy court's opinion. The bankruptcy proceedings arose out of the

dissolution in 1999 of the Pittsburgh law firm of Titus & McConomy,[1] in which Mr. Titus had been a partner. Titus & McConomy rented office space from Trizechahn Gateway LLC ("Trizec") under a long-term lease agreement. In July 2000, Trizec filed a breach of contract suit against Titus & McConomy's former partners in state court for unpaid rent due under the lease. 467 B.R. at 601. In 2006, the state trial court found Mr. Titus and other Titus & McConomy partners jointly and severally liable in the amount of $2.7 million, which, due to interest and costs, subsequently increased to more than $3 million. Id.

After the dissolution of Titus & McConomy, Mr. Titus worked for the law firm of Schnader Harrison Segal & Lewis ("Schnader Harrison"). Beginning in July 2002, Mr. Titus had Schnader Harrison directly deposit his wages into a checking account he owned with his wife as tenants by the entireties. On April 23, 2007, Trizec filed a fraudulent transfer action against the Tituses in state court in an effort to collect on the judgment. Id. The fraudulent transfer action contained three claims under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 PA. CONS. STAT. §§ 5101–5110. The first claim is for actual fraudulent transfer under 12 PA. CONS. STAT. § 5104(a)(1),[2] and the second and third claims are for constructive fraudulent transfer under 12 PA. CONS. STAT.

---

1      The breakup of Titus & McConomy and the subsequent attendant litigation spawned several other bankruptcy adversary proceedings dealing with many of the same issues. See Cardiello v. Arbogast (In re Arbogast), 466 B.R. 287 (Bankr. W.D. Pa. 2012), aff'd 479 B.R. 661 (W.D. Pa. 2012), aff'd Nos. 12-3866, 12-3867, 12-3868, 2013 WL 4007772 (3d Cir. Aug. 7, 2013); Cohen v. Sikirica (In re Cohen), Adversary No. 07-2517, 2012 WL 5360956 (Bankr. W.D. Pa. Oct. 31, 2012), aff'd in part, rev'd in part, 487 B.R. 615 (W.D. Pa. 2013); Shearer v. Oberdick (In re Oberdick), 490 B.R. 687, 703 (Bankr. W.D. Pa. 2013); Sikirica v. Wettach (In re Wettach), 489 B.R. 496 (Bankr. W.D. Pa. 2013).

2      A debtor's transfer is fraudulent as to a creditor "if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." 12 PA. CONS. STAT. § 5104(a)(1).

§§ 5104(a)(2)(ii)[3] and 5105.[4] Titus, 467 B.R. at 602. In the constructive fraudulent claims it is alleged that the direct deposits by Schnader Harrison into Mr. and Mrs. Titus' checking account constituted constructive fraudulent transfers.

On May 20, 2010, TRZ Holdings, Trizec's parent and successor in interest,[5] filed an involuntary chapter 7 bankruptcy petition against Mr. Titus, who removed the fraudulent transfer action to the bankruptcy court. Id. The bankruptcy court entered an order substituting the Trustee for Trizec as plaintiff in the fraudulent transfer action. Id. The Trustee prosecuted the claims under the authority and derivative standing granted by 11 U.S.C. § 544(b)(1). Id. at 602.

The bankruptcy court tried the case on May 25, 2011, and entered its opinion and order on February 29, 2012. The bankruptcy court found in favor of

---

3    A debtor's transfer is fraudulent as to a creditor

    if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

    12 PA. CONS. STAT. § 5104(a)(2)(ii).

4    A debtor's transfer is fraudulent as to a creditor

    if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

    12 PA. CONS. STAT. § 5105.

5    The Tituses objected to TRZ's claim on the basis that it was not the successor in interest to Trizec. The bankruptcy court overruled the objection as nonsubstantive and "pointless," 467 B.R. at 632, and referred to TRZ and Trizec interchangeably in its opinion. Id. at 602. This ruling is not at issue in these appeals.

the Tituses on the actual fraudulent transfer claim, id. at 618,[6] and it entered judgment against the Tituses on the constructive fraudulent transfer claims in the amount of $281,006.18. Id. at 627. The Tituses filed a motion to reconsider, which was denied, and they appealed from the adverse judgment against them on September 14, 2012 (Notice of Appeal, No. 12-1559 ECF No. 1). The Trustee and TRZ Holdings cross appealed on September 20, 2012, raising several issues with respect to the bankruptcy court's findings about the constructive fraudulent transfer claims. (Joint Notice of Cross-Appeal, No. 12-1560 ECF No. 1). A hearing was held by this court on September 25, 2013. The appeals are now ripe to be decided.

## II.   Jurisdiction and Standard of Review

Federal district courts have appellate jurisdiction over the final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.

FED. R. BANKR. P. 8013. When a district court examines a bankruptcy court's decision, "legal determinations are reviewed de novo, factual findings are reviewed for clear error, and discretion is reversed for abuse." Official Comm. of Unsecured Creditors of J. Allan Steel Co. v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.), 336 B.R. 226, 228–29 (W.D. Pa. 2005) (citing In re Sharon

---

6    The judgment in favor of the Tituses on the actual fraudulent transfer claim was not appealed and that holding is final.

Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989)). Mixed questions of fact and law must be broken down and reviewed under the applicable standard. First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 567 (3d Cir. 1991).

The bankruptcy court's decisions regarding discovery management and the scope of discovery are reviewed for abuse of discretion. Kimmelman v. Port Auth. (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 323 (3d Cir. 2003). "An abuse of discretion occurs 'if a discovery ruling is seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'" In re W.R. Grace & Co., 316 F. App'x 134, 137 (3d Cir. 2009) (quoting Pub. Loan Co. v. Fed. Deposit Ins. Corp., 803 F.2d 82, 86 (3d Cir. 1986)).

## III.   Discussion

There are multiple issues in the two appeals before the court. Because many of the issues overlap, the court will consider the two appeals together.

### A. The Trustee's Appeal (No. 12-1560)

The Trustee asserts two issues. First, whether the bankruptcy court erred by not permitting the Trustee to recover any constructive fraudulent transfers made after the complaint was filed on April 23, 2007; and second, whether the bankruptcy court erred by requiring the Trustee to prove that the transferred funds were not spent on necessities as a part of his prima facie case.

### 1.   Applicable Recovery Period

The Trustee argued before the bankruptcy court that he could seek to recover fraudulent transfers made during the period of April 23, 2003–June 30, 2010.[7] The bankruptcy court determined that the look-back period for the fraudulent transfer action was the four years between April 23, 2003, and April

---

[7]   On appeal, the Trustee argues that the appropriate recovery period is April 23, 2003, to May 28, 2010, the date the bankruptcy court entered its order of relief. (Trustee's Br. 9, No. 12-1560 ECF No. 5).

23, 2007, and ruled that the Trustee could not seek recovery of transfers made after the complaint was filed. Titus, 467 B.R. at 607. The bankruptcy court reached this conclusion because a transfer cannot be made under the PUFTA "until the debtor has acquired rights in the asset transferred," 12 PA. CONS. STAT. § 5106(4), and at the time the complaint was filed, Mr. Titus had not yet acquired any right to future wages. Titus, 467 B.R. at 607. The Trustee appeals this ruling. The proper length of the period during which fraudulent transfers can be recovered is a question of statutory interpretation and is reviewed de novo. In re Goody's Family Clothing, Inc., 610 F.3d 812, 816 (3d Cir. 2010).

The Trustee argues that, while the PUFTA statute of repose, 12 PA. CONS. STAT. § 5109, extinguishes any claims prior to April 23, 2003, it does not limit the ability to seek recovery for transfers made after the filing of the complaint. (Trustee's Br. 8, No. 12-1560 ECF No. 5.) The Trustee points out that there is no Pennsylvania case law limiting the period of recovery to four years. (Id. at 9.) In Gross v. Laver, 96 Del. 419 (Pa. Ct. Com. Pl. 2009), the state trial court allowed for recovery of "a continuing fraudulent transfer" during a five-year period, albeit with no direct analysis of section 5109. The PUFTA contemplates ongoing transfers as it specifically permits a creditor to seek and obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." 12 PA CONS. STAT. § 5107(a)(3)(i). The second amended complaint, filed by Trizec, sought such an injunction. (Second Am. Compl. ¶¶ 24, 40, No. 12-1560 ECF No. 1-6.)

The bankruptcy court in In re Arbogast, a case arising out of the same lease and similar fraudulent transfer litigation, concluded that the look-back period was limited to the period April 23, 2003–April 23, 2007. Cardiello v. Arbogast (In re Arbogast), 466 B.R. 287, 300 (Bankr. W.D. Pa. 2012). On appeal, the trustee argued that complaint alleged a continuing violation and that

the trustee is able to recover all fraudulent transactions until the trial, a seven-year period. Cardiello v. Arbogast, 479 B.R. 661, 665 (W.D. Pa. 2012). The district court, however, found that counsel for the trustee had limited her claims to the 2003–2007 time period.[8] Id. The Court of Appeals for the Third Circuit affirmed on the same grounds. Cardiello v. Arbogast, Nos. 12-3866, 12-3867, 12-3868, 2013 WL 4007772, at *4 (3d Cir. Aug. 7, 2013) ("[T]he Trustee's argument may have theoretical merit. But . . . [w]e conclude here, as did the district court on appeal from the bankruptcy court's order, that the Trustee is bound by counsel's unambiguous statement before [the bankruptcy judge]."). The Trustee in this case did not limit the recovery period.[9]

Nothing in the statute or case law suggests that recovery is only permitted for transfers prior to the filing of a fraudulent transfer complaint. The bankruptcy court therefore erred in limiting the recovery period to April 23, 2003–April 23, 2007. The Trustee, however, may have waived his claims to transfers in the period after the complaint was filed. While Trizec included a claim for injunctive relief in the complaint, neither Trizec nor the Trustee moved for a preliminary injunction. On the other hand, the Tituses were aware

---

8    The bankruptcy judge asked, "So, we're dealing with four years back from the date of the complaint? Is that right?" Cardiello v. Arbogast, 479 B.R. 661, 665 (W.D. Pa. 2012). And counsel for the trustee responded, "Correct, your Honor." Id.

9    When asked about the look-back period at the trial in this case, counsel for the Trustee did not so limit Trustee's claims:

> You had asked me before to explain the reach-back period. There's a four-year statute of limitations, the complaint was filed in April of '07, the reach-back would be April of '03. Moves forward to this day, because as a transferee Mrs. Titus does not have the benefit of the automatic stay, so there's no end in sight . . . .

Trial Tr. 158, May 25, 2011, Adversary No. 10-2338 ECF No. 79. The Trustee, however, is not seeking to recover transfers made after the order of relief in involuntary chapter 7 case against Mr. Titus.

that these transfers were at issue, yet they continued to have Mr. Titus's wages directly deposited into the entireties account. The record on this issue is not complete. On remand, the bankruptcy court should consider "applicable principles of equity," 12 Pa. Cons. Stat. § 5107(a)(3), and decide whether the Trustee may recover constructively fraudulent transfers from April 23, 2007, to May 28, 2010.

### 2. Burden of Proof on Whether Funds Used for Necessities

Under the PUFTA, entireties account funds used to pay for "reasonable and necessary household expenses" are not fraudulent. Reitmeyer v. Meinen (In re Meinen), 232 B.R. 827, 842 (Bankr. W.D. Pa. 1999); see Watters v. DeMilio, 16 Pa. D. & C.2d 747, 752 (Ct. Com. Pl. Carbon Cnty. 1959). In Meinen, the court placed the burden of proving that funds were used for necessities on the defendant. Meinen, 232 B.R. at 843. While the bankruptcy court followed Meinen in most respects, it "reluctantly" rejected placing the burden of proof on defendants. Titus, 467 B.R. at 613. Following committee comment 6 to 12 Pa. Cons. Stat. § 5102[10] and applicable case law, the bankruptcy court held that the

---

10    The committee comment provides:

> Neither this chapter nor these comments comprehensively address such evidentiary and procedural matters as the standard of proof required to establish particular facts, allocation of the burden of proof and burden of persuasion, and the circumstances in which such burdens may shift. . . . Except for points specifically addressed, these matters are left to the courts to determine, giving appropriate consideration to, among other things, the policy of construing uniform laws to make uniform the laws of those states which have enacted similar uniform laws (as set forth in 1 Pa.C.S. § 1927 and in the transitional provisions of the act enacting this chapter), the possible desirability of conformity with similar provisions of the Bankruptcy Code and, to the extent not inconsistent with this chapter, prior Pennsylvania case law. However, certain cases applying prior Pennsylvania law have stated in effect (if rephrased in the terms used in this chapter) that if a creditor establishes that the transferor was in debt at the time of a transfer, the burden shifts to the parties seeking to uphold the transfer to establish that the

PUFTA requires the plaintiff to prove that the transferred funds were not spent on necessities as part of the plaintiff's prima facie case. Id.

The Trustee argues that the use of funds to purchase necessities is an affirmative defense and that the bankruptcy court erred by not following Meinen in this respect. (Trustee's Br. 11.) In affirming the bankruptcy court decision in Arbogast, the district court rejected this argument on appeal, also finding committee comment 6 persuasive as to Pennsylvania law. Arbogast, 479 B.R. at 666 (citing Fid. Bond & Mortg. Co. v. Brand, 371 B.R. 708, 717–18 (E.D. Pa. 2007)). The Court of Appeals for the Third Circuit was more equivocal on Pennsylvania law in the Arbogast appeal. Arbogast, Nos. 12-3866, 12-3867, 12-3868, 2013 WL 4007772, at *4 (3d Cir. Aug. 7, 2013) ("Pennsylvania law appears to us to be silent as to whether the demonstration that funds were used for 'reasonable and necessary expenses' is an affirmative defense or instead, a negation of the plaintiff's prima facie case."). Although it pointed out that official comments are given weight in construing Pennsylvania statutes and that other jurisdictions treat similar issues as elements of the prima facie case, the court of appeals ultimately found it unnecessary to answer the question. The defendants in Arbogast produced evidence about the use of funds at trial, and the court found it "highly unlikely that the allocation of the burden of

---

transferor received reasonably equivalent value or met the financial conditions required by 12 Pa.C.S. §§ 5104(a)(2) and 5105. Stinner v. Stinner, 300 Pa. Super. 351, 446 A.2d 651 (1982); In re Glenn, 108 Bankr. 70 (Bankr. W.D. Pa. 1989). That principle is an archaism and has not been consistently followed (compare, e.g., In re Joshua Slocum, Ltd., 103 Bankr. 610 (Bankr. E.D. Pa. 1989), aff'd mem., 121 Bankr. 442 (E.D. Pa. 1989)), and in any event should not be followed in applying this chapter.

12 Pa. Cons. Stat. § 5102 cmt. 6 (1993).

persuasion made any difference." Id. at *5 ("'In a non-criminal case, an error regarding the placement of the burden of persuasion will frequently be harmless.'" (quoting Ridley Sch. Dist. v. M.R., 680 F.3d 260, 271 (3d Cir. 2012))).

Based on the limited Pennsylvania law available, the bankruptcy court correctly place the burden of proving that funds were not used for necessities on the Trustee. According to the committee comment, shifting the burden of persuasion to the defendant is an "archaism" which should be avoided. 12 PA. CONS. STAT. § 5102 cmt. 6. By statute, committee comments "may be consulted in the construction" of statutory provisions, 1 PA. CONS. STAT. § 1939, a principle explicitly approved by both the Court of Appeals for the Third Circuit and the Supreme Court of Pennsylvania. See McGowan v. Univ. of Scranton, 759 F.2d 287, 298 n.14 (3d Cir. 1985); Lessner v. Rubinson, 592 A.2d 678, 680 n.4 (Pa. 1991). Other courts addressing burden shifting under the PUFTA have reached the same conclusion. Arbogast, 479 B.R. at 666; Fidelity Bond & Mortg. Co., 371 B.R. at 716–18. Accordingly, the court affirms the bankruptcy court's ruling with respect to the burden of persuasion.

### B. The Tituses' Appeal (No. 12-1559)

The Tituses argue five major issues on appeal. First, whether the bankruptcy court erred by not following the decisions the state trial court made before removal when determining the applicable legal standards. Second, whether the bankruptcy court erred by imposing a burden of producing evidence about account expenditures and deposits on the Tituses and whether the timing of imposing this burden unfairly prejudiced the Tituses. Third, whether the bankruptcy court erred in calculating the amount of liability because there was insufficient evidence to support its finding that certain unidentified deposits were from Mr. Titus's wages. Fourth, whether the

bankruptcy court erred in finding that a "transfer" occurred pursuant to the PUFTA and that the Tituses may be jointly and severally liable as "transferees." Fifth, whether the bankruptcy court erred in finding liability because Mr. Titus's liability was discharged in the bankruptcy proceedings.

### 1. Preclusive Effect of State Court Proceedings

The Tituses argue the bankruptcy court erred by not adhering to certain rulings made by the state trial court before the removal of the fraudulent transfer action. Specifically, the state trial court issued orders on May 29, 2008, and April 2, 2009, that limited plaintiff Trizec to recovering only from Mrs. Titus and only to the extent she used money from the joint account "for luxury purchases actually benefiting her." Titus, 467 B.R. at 604. In support of their argument that the bankruptcy court was bound by the state court's decisions, the Tituses contend that the law of the case doctrine and the doctrine of judicial estoppel apply. They further argue that the bankruptcy court's reliance on Meinen was misplaced. The Trustee disputes these issues.

The law of the case doctrine promotes "finality and judicial economy" by limiting courts' discretion to reconsider issues previously decided in a lawsuit. Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997). "The doctrine applies 'as much to the decisions of a coordinate court in the same case as to a court's own decisions.'" Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). But the doctrine does not curtail a court's power to revisit prior decisions in "extraordinary circumstances," including where there is (1) new evidence available, (2) a supervening change in the law, or (3) an earlier decision that is "clearly erroneous and would create manifest injustice." Id. at 166–17.

After considering the state court rulings, the bankruptcy court found them to be clearly erroneous and declined to apply them as the law of the case. Titus,

467 B.R. at 610. The bankruptcy court pointed out that the decisions of the state court were not supported by case law. Id. at 608. Instead, the bankruptcy court followed the more persuasive holding of the bankruptcy court in Meinen, concluding that under Pennsylvania constructive fraudulent transfer law, the Trustee could recover any funds not spent on necessities, not just those used for luxuries. Id. After surveying the relevant Pennsylvania case law, the bankruptcy court also rejected the state trial court's ruling limiting recovery to funds actually spent by Mrs. Titus for her own benefit. Id.

The court agrees with these holdings of the bankruptcy court. The decision of the state trial court to limit fraudulent transfers to money spent on luxury items is not consistent with Pennsylvania law. See Watters v. DeMilio, 16 Pa. D. & C.2d at 752 ("'[A]n insolvent's expenses for the maintenance of his family, if shown to be reasonable and necessary, may be a legitimate employment of his money in hand, and will not in such case be considered a conveyance fraudulent in law as to his creditors.'" (quoting Welker v. Strohmeyer, 45 Berks 21 (Pa. Ct. Com. Pl. 1952))). There is no basis for the state trial court's apparent conclusion that everything not reasonable and necessary is a luxury. See Shah v. Shaw (In re Shaw), 294 B.R. 652, 655 (Bankr. W.D. Pa. 2003) ("'Certain goods [or services] may not qualify as necessities and [they] still [will] not be luxuries'" (quoting Montgomery Ward & Co., Inc. v. Blackburn (In re Blackburn), 68 B.R. 870, 874 (Bankr. N.D. Ind. 1987))). Conclusively for this court, the court of appeals affirmed the bankruptcy court's holding on this issue in Arbogast, 2013 WL 4007772, at *5 (finding no authority "that suggests that 'reasonable and necessary expenses' in this context means 'expenses for anything other than luxuries'").

The state trial court's holding that a fraudulent transfer required proof that Mrs. Titus personally spent money from the entireties account for her own benefit is similarly without basis in Pennsylvania law. See In re Estate of

Holmes, 200 A.2d 745, 747 (Pa. 1964) ("Where property or an account is placed in the names of a husband and wife, . . . the creation of an estate by the entireties is presumed even though the funds used to acquire the property or establish the account were exclusively those of the husband."); In re Estate of Cambest, 756 A.2d 45, 53 (Pa. Super. Ct. 2000) (holding that this presumption is not changed by 20 PA. CONS. STAT. § 6303(a)). Because of this presumption, the wages of Mr. Titus were owned by Mrs. Titus as soon as they were deposited in the entireties account, and the bankruptcy court correctly concluded that Mrs. Titus was a transferee whether she personally spent the funds or not. Meinen, 232 B.R. at 841; see Cohen, 487 B.R. at 631 ("[T]he Bankruptcy Court's prediction that the Pennsylvania Supreme Court would follow the Meinen rule, was correct as a matter of law."); Arbogast, 479 B.R. at 667–68 (approving the bankruptcy court's adoption of Meinen), aff'd 2013 WL 4007772. The court concludes that the bankruptcy court was not bound by the rulings of the state trial court as law of the case.

The Tituses maintain that the bankruptcy court's reliance on Meinen is misplaced, arguing that it relied on cases decided under the Uniform Fraudulent Conveyance Act instead of the PUFTA. (Tituses' Br. 15.) For the reasons stated above, the court finds Meinen persuasive as to Pennsylvania law. The other federal courts to address the issue have adopted the reasoning of Meinen with respect to this issue. Cohen, 487 B.R.at 631; Arbogast, 479 B.R. at 667–68; Oberdick, 490 B.R. 687, 703 (Bankr. W.D. Pa. 2013).

The Tituses also argue that judicial estoppel bars the Trustee from pursuing claims beyond those that Trizec pleaded in its second amended complaint in state trial court. (Tituses' Br. 14.) The Tituses did not raise this issue before the bankruptcy court, and the bankruptcy court did not address it in its memorandum opinion or order. The Tituses point to bringing the "entire

sequence of events and the legal consequences of Trizec's decisions" to the attention of the bankruptcy court on multiple occasions. (Tituses' Reply 2–3, No. 12-1559 ECF No. 8.) But none of these filings raised the discrete legal argument of judicial estoppel, and "a passing reference to an issue . . . will not suffice." Simmons v. City of Phila., 947 F.2d 1042, 1066 (3d Cir. 1991) (Becker, J.). This court will not entertain this argument for the first time on appeal. See United States v. Lockett, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.").[11] Because there are matters being remanded, the Tituses may seek to raise this issue before the bankruptcy court.

### 2. The Burden of Production

As noted above, the bankruptcy court correctly held that the Trustee had the burden of proof on all elements of the PUFTA claims, including whether funds were spend on necessities. The bankruptcy court did, however, impose on the Tituses "the burden of producing at least some useful evidence regarding what the funds deposited into [the] entireties bank account [were] ultimately

---

11 Even if the argument on judicial estoppel were properly before the court, it is without merit. Judicial estoppel prevents a party from asserting a position contrary to one previously asserted in the litigation if it took either of the positions in bad faith. Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 151 n.8 (3d Cir. 2007). Judicial estoppel is "an extreme remedy, to be used only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Chao v. Roy's Constr., Inc, 517 F.3d 180, 186 n.5 (3d Cir. 2008) (internal quotation marks omitted); see Scarano v. Cent. R.R. Co. of N.J., 203 F.2d 510, 512–13 (3d Cir. 1953) (articulating the doctrine of judicial estoppel for the first time in a case where the plaintiff won a damages award from his employer for total incapacitation and then attempted to sue for reinstatement). There is no evidence that the Trustee acted in bad faith or attempted to mislead the court at any stage of the litigation.

spent on." <u>Titus</u>, 467 B.R. at 613. The Tituses argue that placing this burden of production on them was contrary to law and that, even if the burden of production was appropriate, they were unfairly prejudiced because they did not know this burden would be placed on them until the bankruptcy court issued its opinion. Whether the bankruptcy court imposed the proper evidentiary burdens is a question of law reviewed de novo.

In support of their argument that the bankruptcy court erred by imposing a burden of production on them regarding expenditures from the entireties account, the Tituses point to committee comment 6 to 12 PA. CONS. STAT. § 5102, discussed extensively above. While this comment suggests that shifting the burden of persuasion is archaic, contrary to the Tituses' argument, it does not address the burden of production.

The bankruptcy court recognized that shifting the burden of production is often appropriate where, as is the case here, one party is in complete control of the relevant evidence. <u>Titus</u>, 467 B.R at 613. The district courts in <u>Arbogast</u> and <u>Cohen</u> affirmed placing this burden on the defendants. <u>Arbogast</u>, 479 B.R. at 666; <u>Cohen</u>, 487 B.R. at 621 (citing <u>Arbogast</u>). This court joins with those courts in holding that placing a burden of production on the Tituses with respect to the funds spent from the entireties account is appropriate.

The Tituses argue that they were unfairly prejudiced by the timing of the notice to them that they had the burden of production. They were surprised when the amount of alleged fraudulent transfers the Trustee sought to prove in his pretrial statement vastly exceeded the amount disclosed as fraudulent in his answers to interrogatories. (Tituses' Br. 23.) The Tituses filed a motion in limine to limit evidence to the amounts disclosed in the answers to interrogatories. (<u>Id.</u>) The bankruptcy court delayed ruling on this motion until trial and never informed the parties about the burden of production until the opinion was

issued. (Id. at 23–24.) The Tituses state that had they known the burden of production would rest with them, they "could easily have obtained" the information required. (Id. at 22.)

In response, the Trustee argues that the Tituses knew that the expenditures were at issue. (Trustee's Resp. 12, No. 12-1559 ECF No. 6.) Under the most relevant case decided at that time, Meinen, the Trustee expected the entire burden of proof to be on the Tituses. (Id.) The Tituses should therefore have prepared to present evidence regarding the expenditures and were not prejudiced. (Id. at 13.)

A question of the bankruptcy court's discovery management or evidentiary rulings is reviewed for abuse of discretion. Here, the issue is not the substance of the bankruptcy court's decision, but the timing. The law regarding the burdens of proof and production in a PUFTA action was not clear, as the Court of Appeals for the Third Circuit recently recognized. Arbogast, 2013 WL 4007772, at *4. While the bankruptcy court correctly imposed the burden of producing evidence on expenditures from the entireties account, waiting until after trial to decide that issue deprived the Tituses of an adequate opportunity to produce the records in question. Under those circumstances, the court concludes an abuse of discretion occurred and will remand to allow the Tituses to introduce evidence about the unknown expenditures. The burden of persuasion, however, rests with the Trustee.

### 3. Sufficiency of Evidence

The Tituses challenge the sufficiency of the evidence relied on by the bankruptcy court to determine the amount of deposits into the entireties account attributable to Mr. Titus's wages from Schnader Harrison. (Tituses' Br. 25.) The bankruptcy court found that the Trustee had proven by a preponderance of the evidence that deposits in the amount of $336,909.03 were

directly attributable to Mr. Titus's wages. In re Titus, 467 B.R. at 619. The Trustee was unable to attribute deposits of $518,669.42 "to any particular source," and the bankruptcy court found that the Trustee had not met the burden to prove that all those funds came from Mr. Titus's wages. Id. at 619–20. The bankruptcy court did find the evidence was sufficient for it to attribute $238,319.22 of those unknown deposits to Mr. Titus's wages. Id. at 620. The court was "certain" that Schnader Harris deposited more than $336,909.03 from April 23, 2004, to April 23, 2007, because in the "roughly equivalent period" from June 2, 2006, to July 1, 2010, Mr. Titus earned $575,288.25, and "the Court does not understand that the Debtor's salary . . . increased subsequent to April 23, 2007." Id. The bankruptcy court concluded that Trustee had proven by a preponderance of the evidence that $575,288.25 of deposits were attributable to wages. Id. The Tituses challenge the inclusion of the $238,319.22 of unknown deposits in Mr. Titus's wages. The bankruptcy court's factual findings are reviewed for clear error.

The bankruptcy court had four reasons for attributing a "substantial portion" of the unknown deposits to Mr. Titus's wages:

> (a) such deposits, according to the Trustee's Trial Exhibit 30, were all made during the period from April 30, 2003, to April 21, 2006, (b) the Trustee has not been given information by the Debtor from which he can ascertain, for the period prior to June 2, 2006, what portion of such deposits are attributable to such wages of the Debtor, (c) the Debtor, as set forth above, bears the burden of producing such evidence, and (d) the Court itself can readily ascertain, from a brief examination of such trial exhibit, that many of the deposits in question are indeed attributable to direct deposits of the Debtor's wages.

Id. It does appear that some of the unknown deposits are from Schnader Harrison. For example, there are seventeen known deposits of $11,166.67 from

Schnader Harrison and there are four unknown deposits of exactly $11,166.67 (totaling $44,666.68) during the look-back period. (Pl.'s Trial Ex. 30, Adversary Proceeding No. 10-2338, ECF No. 71-2.) Based upon that evidence, and considering Mr. Titus's wages from Schnader Harrison during the June 2, 2006–July 1, 2010 period and the burden of production placed on the Tituses, the court concludes that the bankruptcy court's determination that $238,319.22 of the unknown funds were wages was not clearly erroneous. In light of the bankruptcy court weighing the burden of production in making that finding, on remand, the Tituses should be given the opportunity to introduce evidence about the source of these unknown deposits.

The Tituses argue that the bankruptcy court failed to credit the full amount of nonwage deposits into the entireties account against the "objectionable expenditures," or those expenses not for necessities. (Tituses' Br. 25.) The bankruptcy court did credit $142,974.00 of Mrs. Titus's social security benefits, concluding that it was "at least as likely as not" that they funded objectionable expenditures. <u>Titus</u>, 467 B.R. at 624. The bankruptcy court, however, declined to deduct unexplained deposits from the objectionable expenditures. <u>Id.</u> at 620, 623–24. In <u>Cohen</u>, the district court commented favorably on the bankruptcy court's decision in this case:

> If the Court were to reduce the [objectionable expenditures by the amount of unknown deposits], it would incentivize Appellants not to come forward with any information that they had regarding the source of those funds. It would allow them to avoid judgment in this action merely by having funds deposited into the account that could not be traced. Furthermore, the Court agrees with the Bankruptcy Court in <u>Titus</u> that because sufficient deposits attributable to [the defendant's] wages exist to fund the unexplained expenditures that those transfers were constructively fraudulent.

<u>Cohen</u>, 487 B.R. at 625. The court agrees with that analysis. Upon remand, the Tituses will have the opportunity to produce evidence about the source of the unknown funds. The burden of persuasion, however, remains with the Trustee.

### 4. The Bankruptcy Court's Interpretation of the PUFTA

The Tituses argue that the bankruptcy court erred in its interpretation of several provisions of the PUFTA as applied to this case. According to the Tituses, there was no "transfer" of an "asset" as those terms are defined in 12 PA. CONS. STAT. § 5101(b), and the bankruptcy court's ruling to the contrary was based on the erroneous <u>Meinen</u> decision. The Tituses also argue that neither Mr. Titus nor Mrs. Titus was a "transferee" within the meaning of 12 PA. CONS. STAT. § 5108. These issues of statutory interpretation present questions of law and are reviewed de novo by this court.

The Tituses claim that the direct deposit of Mr. Titus's wages into their entireties account cannot be a "transfer" because neither the wages nor the entireties account are "assets" under the PUFTA. (Tituses' Br. 17–18.) The term "asset" does not include "property to the extent it is generally exempt under nonbankruptcy law" or "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." 12 PA. CONS. STAT. § 5101(b). The Tituses correctly point out that wages in the hands of the employer are exempt under nonbankruptcy law. <u>See</u> 42 PA. CONS. STAT. § 8127(a). Since exempt wages were deposited into an exempt bank account, they argue there can be no fraudulent transfer.

The bankruptcy court correctly rejected this argument, which is substantively similar to the position taken by the state trial court before removal. The bankruptcy court found <u>Meinen</u>'s analysis of Pennsylvania law to be persuasive, a view shared by the federal courts dealing with related cases. <u>See</u> <u>Cohen</u>, 487 B.R. at 632 (W.D. Pa. 2013) ("The direct deposit of funds

constituted a transfer under the UFTA."); <u>Arbogast</u>, 479 B.R. at 667 (W.D. Pa. 2012) (affirming the bankruptcy court's holding that direct deposits of the debtor's wages into an entireties account may constitute constructive fraudulent transfers); <u>Oberdick</u>, 490 B.R. at 703 (Bankr. W.D. Pa.) ("The Court here also finds <u>Meinen</u> to be persuasive and concludes that the direct deposits from [the employer] into the Entireties Account by [the employer] was a 'transfer' for purposes of [PUFTA].").

The court agrees with this analysis. Under the PUFTA, the direct deposit of a spouse's wages into a bank account owned by both spouses as tenants by the entireties is a transfer. Mr. Titus had control over his wages, and he directed Schnader Harrison to deposit his wages in the account. It would be a strange result to allow direct deposit to circumvent the PUFTA when an employee who physically deposited paychecks or cash into an entireties account could face fraudulent transfer liability. As recognized by the bankruptcy and district courts of this district, such a result is not compelled by Pennsylvania law.

The bankruptcy court found that Mr. Titus and Mrs. Titus were both "initial transferees" and imposed joint and several liability. <u>Titus</u>, 467 B.R. at 611. The Tituses argue that neither Mrs. Titus nor Mr. Titus can be a "transferee" under PUFTA. The Tituses contend that Mrs. Titus cannot be a "transferee" except "as to funds over which she exercised control in order to purchase luxury items for her sole use." (Tituses' Br. 27). The Tituses again appear to be relying on the rejected rulings of the state trial court and cite no other case law in support. Whether Mrs. Titus personally spent funds is not relevant. Under Pennsylvania law, she had ownership and control over the funds in the joint account.

The Tituses argue that an entireties bank account where either spouse could spend the money without the other's permission is a different form of

ownership than real estate held as tenants by the entireties. This distinction is not borne out by Pennsylvania law. Bank accounts held in the name of husband and wife are entireties property. Madden v. Gosztonyi Savings & Trust Co., 200 A. 624, 629 (Pa. 1938); In re Klenke's Estate, 60 A. 166 (Pa. 1905). Entireties property is presumptively for the benefit of both husband and wife. Shapiro v. Shapiro, 224 A.2d 164, 173 (Pa. 1966).

The bankruptcy court correctly determined that transferee liability attaches when a transfer is made "without receiving a reasonably equivalent value in exchange," 12 Pa. Cons. Stat. § 5104(a)(2), unless the transferred funds were spent on necessities. Titus, 467 B.R. at 620 (citing Meinen, 232 B.R. at 842–43). Because no equivalent value was exchanged when Mr. Titus deposited his wages in the entireties account, Mrs. Titus is a transferee under PUFTA.[12]

The bankruptcy court held that Mr. Titus was, along with Mrs. Titus, an initial transferee of the direct deposits. Titus, 467 B.R. at 611. The Tituses claim that Mr. Titus cannot be a "transferee" because he is the judgment debtor. (Tituses' Br. 27). It is "illogical" for Mr. Titus to be the transferee when he is also the transferor. (Id.) In response, the Trustee argues that there was a transfer from one ownership entity, Mr. Titus as an individual, to another "singular entity," Mr. Titus and Mrs. Titus as tenants by the entireties. (Trustee's Resp. 18.) This is not an apt description of Pennsylvania law as "a tenancy by the

_____

12   The Tituses argue that this holding could set up a situation where a spouse could transiently transfer funds into and out of an entireties account without the other spouse's knowledge or consent and thereby make the innocent spouse fully liable for fraudulent transfers. Although there is a presumption that property titled to a husband and wife is entireties property, that presumption may be overcome if one spouse takes advantage of the other or engages in fraud or misrepresentation. Butler v. Butler, 347 A.2d 477, 481 (Pa. 1975); see Shapiro, 224 A.2d at 169 (affirming imposition of a constructive trust on husband where he had complete control and supervision over jointly owned property).

entireties is no longer a distinct legal entity." <u>Shubert v. Dawley (In re Dawley)</u>, Adversary No. 02-0332, 2005 WL 2077074, at *15 n.41 (Bankr. E.D. Pa. Aug. 10, 2005) (citing <u>Napotnik v. Equibank & Parkvale Ass'n</u>, 679 F.2d 316, 319 (3d Cir. 1982)).

In ruling that Mr. Titus could be both a transferor and a transferee, the bankruptcy court cited two decisions of the Bankruptcy Court for the Eastern District of Pennsylvania, <u>Dawley</u> and <u>Lichtenstein v. Buttery (In re Computer Personalities Sys., Inc)</u>, Nos. 01-14231, 01-1017, 2002 WL 31988134 (Bankr. E.D. Pa. 2002). In <u>Dawley</u>, the court held the husband and wife jointly and severally liable as initial transferees. <u>Dawley</u>, 2005 WL 2077074, at *15. The court was not troubled by the fact that the property "was transferred from the Debtor to himself and [his wife]" as entireties property" as it could find "no authority . . . to suggest that this conclusion is incorrect." <u>Id.</u> The bankruptcy courts addressing the Trizec fraudulent transfer cases have all followed this line of reasoning and held both spouses jointly and severally liable as transferees. <u>Arbogast</u>, 466 B.R. at 307; <u>Cohen</u>, 2012 WL 5360956, at *1; <u>Wettach</u>, 489 B.R. at 507; <u>Oberdick</u>, 490 B.R. at 710 (finding against Trizec and the Trustee, but quoting <u>Arbogast</u> with approval as to joint and several liability). This court is also not aware of any authority to the contrary, and is unwilling to overrule this decision on this record. If, however, the Tituses are aware of contrary authority or other reason why this line of decisions is incorrect or if there are equitable issues concerning their situation, they should have the opportunity to present evidence and authority on remand. <u>See</u> <u>Butler v. Butler</u>, 347 A.2d 477 (Pa. 1975) (discussing equitable remedies as applied to entireties property).

The Tituses illogically assert that because the bankruptcy court found no evidence of actual intent to defraud creditors, there can be no transferee liability. (Tituses' Br. 27). Although the bankruptcy court's judgment that the

Trustee failed to prove actual intent to defraud Trizec stands, the Tituses' assertion ignores the claims for constructive fraudulent transfer under 12 PA. CONS. STAT. §§ 5104(a)(2) and 5105. The bankruptcy court correctly determined that the Tituses could be liable under those provisions without proof of intentional fraud.

The court affirms the bankruptcy court's interpretation of the PUFTA. In accord with the other courts to have addressed this issue, the direct deposit of Mr. Titus's wages into the bank account owned by Mr. and Mrs. Titus as tenants by the entirety is a transfer, and, without any applicable principle of equity, Mr. and Mrs. Titus may both be liable as transferees. See 12 PA. CONS. STAT. § 5107(a)(3).

### 5. Effect of Mr. Titus's Bankruptcy Discharge

The Tituses argue that Mr. Titus's personal liability for the underlying judgment and any fraudulent transfers was discharged in bankruptcy, citing 11 U.S.C. §§ 524 and 727(a)(2). (Tituses' Br. 28). In response, the Trustee states that a bankruptcy discharge does not bar recovery or avoidance of fraudulent transfers under 11 U.S.C. § 550(a)(1). (Trustee's Resp. 19.) The Tituses reply that "[t]he Plaintiff has never pled a right to relief pursuant to Section 550(a)(1)" and any recovery must be governed by 12 PA. CONS. STAT. § 5108. Although the bankruptcy court invoked § 550(a), the Tituses contend it erred in doing so. (Tituses' Reply 7 & n.7.)

Trizec filed the fraudulent transfer action in state court before the pendency of Mr. Titus's bankruptcy, and accordingly Trizec did not plead for recovery under § 550 of the Bankruptcy Code. Trizec did not amend its complaint after the case was removed to bankruptcy court, and neither did the Trustee after he was substituted as the plaintiff. The Trustee argues that since he was substituted for Trizec pursuant to 11 U.S.C. § 544(b)(1), federal

bankruptcy law applies even though it was not pleaded in the complaint. Section 550(a) permits a trustee to recover the value of transfers avoided under § 544.

The court agrees with the Trustee. It is uncontested that the Trustee stepped into the shoes of Trizec under § 544. The Trustee is only able to pursue this case under the provisions of the Bankruptcy Code. Section 550 is the applicable recovery provision of the Bankruptcy Code, and it provides that "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550. The power to seek recovery under § 550 is part of the Trustee's authority and is applicable in this case, even if not specifically pleaded in the complaint in state court. The Tituses removed the fraudulent transfer case to bankruptcy court and the Trustee was substituted as the plaintiff under § 544. The Bankruptcy Code governed the remedy, which is set forth in § 550. Even if required to be plead in the adversary complaint, a party may move at any time to amend the pleadings, including after remand, and "failure to amend does not affect the result of the trial of that issue." FED. R. CIV. P. 15(b)(2) (applied to adversary proceedings by FED. R. BANKR. P. 7015); see 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1489 (2010) ("[I]f the court of appeals determines that the lower court impliedly tried the case on a theory not set forth in the pleadings, it may permit a conforming amendment—in effect under Rule 15(b) (or at least by analogy to it)—to include that theory in the trial record.").

Liability under 11 U.S.C. § 550 is not affected by a bankruptcy discharge. Cohen, 487 B.R. at 628 ("'The discharge of the debtor has no impact on a judgment entered under § 550(a).'" (quoting In re Moss, No. 00-30934, 2004 U.S. Bankr. LEXIS 1190, at *4.)); Arbogast, 466 B.R. at 307 ("[T]he Debtor's

Chapter 7 discharge and § 524 will not operate to bar the entry of a money judgment against the Debtor at this time via § 550(a)(1) . . . .")). The court affirms the determination of the bankruptcy court with respect to the effect of Mr. Titus's discharge.

## IV.    Conclusion

For the reasons set forth above, the court finds after de novo review that the legal holdings of the bankruptcy court about the preclusive effect of the ruling made by the state trial court, the burden of proof and the burden of production with respect to unknown deposits and expenditures from the entireties account, the meaning of "transfer" and "transferee" in the PUFTA, and the effect of Mr. Titus's discharge are correct. The court, however, finds that the bankruptcy court erred by imposing the burden of production on the Tituses without notice and an opportunity to present relevant evidence and by limiting the recovery period to the four years before the complaint was filed. The court remands the case to the bankruptcy court for a determination of liability from April 23, 2003, to May 28, 2010, unless the court finds that equitable principles do not permit transfers after April 23, 2007 to be included. On remand, the Tituses may produce evidence about the unexplained deposits and expenditures and any other matter permitted by the bankruptcy court.

An appropriate order will be entered.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: September 30, 2013